UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHAUNTA M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01947-RLY-DLP |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Shaunta R. McCloud, suffers from, among other things, Marfan syndrome, a connective tissue disease that has primarily affected her heart, aorta, and wrist ligaments.  On March 28, 2016, at the age of 37, she filed her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.  The Social Security Administration denied her claim initially on June 1, 2016, and again after reconsideration on August 26, 2016.  Nearly three years later, an Administrative Law Judge ("ALJ") ruled that she was not disabled.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

On July 24, 2020, Plaintiff filed the present action seeking judicial review of the Commissioner's decision.  Pursuant to 28 U.S.C. § 636, the court referred the matter to the Magistrate Judge, and, on December 30, 2021, she recommended that the court reverse and remand the case for the ALJ to conduct a proper credibility assessment.  The Commissioner objects.  For the reasons explained below, the court **OVERRULES** the

1

Commissioner's objection, **ADOPTS** the Report and Recommendation, and **REMANDS** this case to the ALJ.

## I.      Testimony from the Hearings

After Plaintiff's claim for SSI benefits was denied, she asked for a hearing before an ALJ.  The ALJ granted her motion and held a hearing on October 25, 2018.  At the conclusion of the hearing, he asked for a supplemental hearing with a medical expert. The second hearing was held on May 23, 2019.

### A.      Plaintiff's Testimony

During the October 2018 hearing, Plaintiff testified she was formerly employed in housekeeping at Community East Hospital.  (Filing No. 12-2, Hearing Test. at 59).  She stopped working in 2009 due to heart-related issues.  (*Id.*).

Plaintiff explained she is not sure when she wakes up whether she will have a good or bad day.  (*Id.*).  Her cardiac conditions cause fatigue, shortness of breath, dizzy spells, and chest pain.  (*Id.* at 62-63).  She depends on her teenaged children to help her cook and clean.  (*Id.* at 60, 63).  She reports having to lie down when she has symptoms, and sometimes she cannot get back up for the rest of the day.  (*Id.* at 63).  Such bad days happen three or four times a week.  (*Id.* at 68).  She can walk three to four blocks at a time, stand for 20 minutes at a time, and sit for 15 to 20 minutes at a time.  (*Id.* at 67-68).

She is on blood thinners and at least three different blood pressure medications. (*Id*. at 60, 66-67).  Sometimes her blood pressure pills make her tired, dizzy, and lightheaded.  (*Id.* at 67).

She does not drive anymore due to "[her] episodes with the dizziness and lightheadedness." (*Id.* at 65).

Plaintiff had surgery on her right wrist. (*Id.* at 61). She has difficulty writing with her right hand, and she also finds it hard to grip with that hand. (*Id.*). She can lift five pounds with her right hand and ten pounds with both hands. (*Id.* at 62).

Plaintiff testified again on May 23, 2019. She continued to complain of dizziness, shortness of breath, fatigue, and chest pains. (*Id.* at 35). The fatigue and dizzy feeling occur about three or four times a week. (*Id.*).

### B.      Dr. Shilling's Testimony

On May 23, 2019, board certified cardiologist Steven Shilling, M.D., testified as a medical expert. (*Id.*). Dr. Shilling reviewed the record, noting that Plaintiff had Marfan syndrome and an aortic valve replacement which was common with Marfan syndrome patients. (*Id.* at 38). He opined that since her valve replacement surgery, there was "no evidence of any significant major pathology. . . at least from a cardiovascular point of view." (*Id.* at 40). Dr. Shilling thought her cardiovascular problems posed only "slight limitations in physical activity," meaning she would be able to stand and walk at least six hours of an eight-hour workday. (*Id.* at 41). There was no formal stress test to review in Plaintiff's medical file, so he could not be "more specific." (*Id.*). He also testified that Plaintiff's wrist impairment was likely a complication of her Marfan syndrome, as Marfan patients often have "ligament laxity." (*Id.* at 42). But he did not "see anything in the file that showed any significant complications or disappointments from the surgery." (*Id.*).

Dr. Shilling heard Plaintiff's updated testimony regarding her allegations of shortness of breath, dizziness, heart palpitations, and fatigue. (*Id.* at 44-48). He also saw those same "complaints throughout [her] [medical] file." (*Id.* at 46). He did not "see a definitive explanation for them" but that did not mean "that the symptoms aren't present." (*Id.* at 46-47). He further noted that Marfan syndrome does not automatically mean a patient will suffer from fatigue. (*Id.* at 47). Many cardiac patients complain of fatigue and "sometimes you never really quote/unquote, figure it out." (*Id.*).

He mentioned patients like Plaintiff are on multiple prescription medications. (*Id.*). One of Plaintiff's prescription medications is metoprolol, and "[p]atients do have fatigue on chronic metoprolol therapy. That's one of the number one side effects of that particular medication." (*Id.* at 48).

## C.     The ALJ's Decision

Following the May 2019 hearing, the ALJ found that Plaintiff suffered from the following severe impairments: Marfan syndrome, with a history of valve replacement surgery and aortic aneurysm, and right wrist scaphoid ligament disruption with surgical repair. (Filing No. 12-2, Decision at 18). He found Plaintiff had the residual functional capacity to perform sedentary work with the following exertional limitations: lift, carry, push, or pull up to 10 pounds occasionally and up to 5 pounds frequently; stand and walk, in combination, no more than 2 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasional stooping, balancing, crouching, crawling, kneeling, and climbing ramps and stairs; no work around hazards, such as unprotected heights or unguarded, dangerous moving machinery; no climbing of ladders, ropes, or scaffolds; no work in

temperature extremes or unusually high levels of humidity; no concentrated exposure to concentrated levels of dust, fumes, gases, strong odors, or poor ventilation; no exposure to loud background noise; and frequent handling and fingering. (*Id.* at 20). And he found that although she could not do her past work as a housekeeper, she was capable of adjusting to other jobs in the national economy in representative occupations such as lens inserter, document preparer, or order clerk. (*Id.* at 23-25).

## II.    The Magistrate Judge's Report and Recommendation

The primary issue raised before the Magistrate Judge was whether the ALJ failed to provide specific reasons for discrediting Plaintiff's subjective symptom allegations in formulating her RFC, as required by Social Security Ruling ("SSR") 16-3p.[1]   The Commissioner responded by arguing that the ALJ reasonably relied on Dr. Shilling's opinion that Plaintiff had only slight limitations on physical functioning, as the very purpose of his testimony was to opine on the scope of her functional limitations. The Magistrate Judge rejected the Commissioner's argument and recommended that the court remand this case to the ALJ to conduct a more thorough credibility analysis.

---

[1] "In evaluating a claimant's credibility, the ALJ must comply with SSR 16-3p and articulate the reasons for the credibility determination." *Gregory v. Saul*, No. 1:19-cv-05011-DLP-SEB, 2021 WL 925873, at *11 (S.D. Ind. March 11, 2021) (citation omitted). SSR 16-3p sets forth a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. Here, the ALJ so found. Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms, such as pain, and determine the extent to which an individual's symptoms limit her ability to perform work-related activities. SSR 16-3p.

The Seventh Circuit's decision in *Plessinger v. Berryhill*, 900 F.3d 909 (7th Cir. 2018), is central to the Magistrate Judge's ruling.  In *Plessinger*, the claimant suffered from congenital spinal stenosis and degenerative disc disease.  *Id.* at 913.  The ALJ gave "great weight" to the opinion of Dr. John Pella in determining that the claimant was not disabled.  *Id.* at 915.  Dr. Pella qualified his testimony by stating that his opinion was limited to the objective medical evidence, and that the credibility of the disabling effects of the claimant's pain would have to be determined by the judge in formulating his RFC. *Id.*  But in conducting his credibility analysis, the ALJ "deferred entirely to the testimony of Dr. Pella."  *Id.* at 916.  The court held that the "ALJ cannot delegate to any doctor, and certainly not to a non-examining doctor, the task of evaluating the claimant's credibility." *Id.* at 915.

The Magistrate Judge found the ALJ erred in relying on Dr. Shilling's medical expert testimony to support his credibility analysis:

> Dr. Shilling, a physician who neither examined nor treated [Plaintiff], qualified his responses at the hearing by noting that his opinion was limited to the objective medical evidence and that the ALJ would need to quantify [Plaintiff's] subjective symptoms.  At no point in his testimony did Dr. Shilling discount [Plaintiff's] subjective symptoms; rather, he repeatedly pointed out that they existed in the record.  As in *Plessinger*, the ALJ was permitted to rely on Dr. Shilling's opinion for weighing the objective medical evidence, but was required to conduct his own credibility analysis.

(Filing No. 18, Report and Recommendation at 12) (record citations omitted).

The Magistrate Judge then turned to whether the ALJ's credibility analysis was sufficient.  She determined it was not.  She found the ALJ's consideration of Plaintiff's daily living activities as reported in her Functional Report was flawed, as he "left out

some vitally important limiting details of [Plaintiff's] claimed activities." (*Id.*).  As an example, the Magistrate Judge pointed out that in her Functional Report, Plaintiff stated that she can do laundry, "but it takes 2-3 hours because she needs frequent breaks, and that oftentimes her children will have to finish her chores because she needs to lay down[.]" (*Id.* at 13 (citing Filing No. 12-6, Function Report at 29)).  The Magistrate Judge also found the ALJ's reliance on Plaintiff's medical records "present[ed] a very limited view of [Plaintiff's] complaints to her providers." (*Id.* at 13).  Her review of Plaintiff's medical records reflected that Plaintiff "consistently reported over a three-year period that despite her successful surgeries on her aortic aneurysms, she still experienced fatigue, shortness of breath, dizziness, and heart palpitations, severe enough to interfere with her daily activities." (*Id.* at 14).  She therefore recommended that the district court remand this action to the ALJ to conduct a more thorough credibility analysis.

## III.   Standard of Review

In reviewing the ALJ's decision, the court determines whether it is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).  The court does not reweigh the evidence, resolve conflicts in the record, make credibility determinations, or substitute its own judgment for that of the ALJ.  *See Stepp*, 795 F.3d at 718; *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).  An ALJ need not mention every piece of evidence, *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012), but he must build an accurate and logical bridge from the evidence to his conclusions, *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015), and his decision must be internally

consistent.  *See, e.g.*, *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1998).

When a party raises specific objections to a Magistrate Judge's Report and Recommendation under Rule 72(b), the district court reviews those matters *de novo*, determining for itself whether the Commissioner's decision on those issues is supported by substantial evidence.  Upon conducting a review, the court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## IV.    Discussion

Citing *Britt v. Berryhill*, 889 F.3d 422 (7th Cir. 2018), the Commissioner argues the Magistrate Judge's Report and Recommendation "overlooks ample Seventh Circuit authority the Commissioner cited in her brief collectively holding that if an ALJ calls a medical expert to testify about what a claimant can and cannot do in the workplace, that expert's testimony constitutes substantial evidence upon which an ALJ may rely, especially where, as here, the medical expert considered the claimant's allegations of symptoms."  (Filing No. 19, Objection at 4).  Plaintiff failed to respond to the Commissioner's Objection.

As an initial matter, Dr. Shilling's opinion was limited to evaluating the objective medical evidence.  (*See* Hearing Test. at 45 ("I'm with [sic] looking at objective evidence[.]"); *id.* at 48 (explaining he was looking at her case "from a cardiovascular point of view")).  Although he noted Plaintiff's subjective complaints of shortness of breath, dizziness, heart palpitations, and fatigue throughout her medical file, he explained

that "understanding subjective complaints and trying to corroborate with objective findings is sometimes easy and sometimes difficult."  (*Id.* at 47).  He thought "it was difficult in this particular case[.]"  (*Id.*; *see also id.* at 46 (stating he "did not see a definitive explanation" for Plaintiff's subjective complaints); *see also id.* at 47 ("You know, why do cardiac patients complain of fatigue?  Again, sometimes you never really, quote/unquote, figure it out."); *id.* at 48 ("Patients do have fatigue on chronic metoprolol therapy. . .  And frankly, I think in this particular case, there are some things that are difficult to tie together.")).  He therefore deferred to the ALJ to make that determination.  (*Id.* at 48 (explaining Plaintiff's "limitations from a cardiovascular point of view would be minimal," but the extent of her limitations should be quantified by the judge)).  Thus, the entire premise of the Commissioner's argument—that Dr. Shilling considered Plaintiff's subjective complaints in determining her residual functional capacity—is belied by his own testimony.

Second, contrary to the Commissioner's argument, this case is not like *Britt v. Berryhill*, 889 F.3d 422 (7th Cir. 2018).  In *Britt*, the claimant argued the ALJ erred in his determination of his residual functional capacity by failing to evaluate his testimony that he needed to elevate his foot as a treatment measure to reduce pain.  *Id.* at 425.  The Seventh Circuit rejected the claimant's argument, holding that substantial evidence supported the ALJ's credibility determination because the ALJ chose to rely on the medical expert's opinion that elevation was not medically necessary, and the medical expert's opinion was consistent with the objective medical evidence.  *Id.* at 426.  *Britt* is distinguishable from this case, as the medical expert gave an opinion on whether foot

9

elevation was medically necessary. *Britt* does not stand for the proposition that an ALJ may rely on a medical expert to quantify a claimant's subjective symptoms of pain, fatigue, dizziness, and the like. Indeed, such a holding would be contrary to the holding in *Plessinger*.

Third, the ALJ did not adequately explain his reasons for rejecting Plaintiff's subjective complaint allegations. When assessing a claimant's subjective symptoms, social security rules and regulations require the ALJ to consider the entire case record, including the objective medical evidence; the claimant's daily activities; the claimant's level of pain or other symptoms; aggravating factors; the medications used to alleviate the claimant's symptoms, including any side effects; the claimant's course of treatment; and any functional limitations. 20 C.F.R. § 416.929(c); SSR 16-3p. Although the court will defer to an ALJ's subjective symptom findings that are not "patently wrong," the ALJ must justify his findings with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing SSR 16-3p ("The determination or decision must contain specific reasons for the weight given to the individuals symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.")). The failure to do so can be grounds for reversal. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Here, the only credibility factor discussed[2] by the ALJ was Plaintiff's activities of daily living.  (Decision at 22).  Regarding those activities, the ALJ relied on Plaintiff's Functional Report for the following:

> [Plaintiff] has no problems caring for her personal care and is able to help her children with homework, prepare simple meals, and do laundry and some cleaning with breaks.  She also reported being able to go out alone, shop, manage her finances, watch television, talk on the phone with people, go to church on Sundays when she can, and follow instructions well.

(*Id.*).  As the Magistrate Judge observed, the ALJ's account of Plaintiff's daily activities is flawed.  For example, Plaintiff stated in the Functional Report that she relies on the assistance of her children and other family members to cook, clean, and do chores around the house.  (Functional Report at 29).  When she cooks, she usually uses a crockpot because she tires easily from standing very long.  (*Id.*).  She does laundry once a week, but it takes 2-3 hours because she must take breaks.  (*Id.*).  Her children have chores to help maintain the house.  (*Id.*).  She goes outside 3-4 times a week to check the mail or to get fresh air.  (*Id.* at 30).  She also goes to church when she can on Sundays and has blood work performed weekly.  (*Id.* at 31).  She does not drive because she can get dizzy spells.  (*Id.* at 30).  She also explained that every day is a challenge; some days she is so weak her children must help her out of bed and some days she has awful headaches

---

[2] Notably, the ALJ did not discuss the side effects of Plaintiff's blood pressure medications. Plaintiff testified her blood pressure medications cause her fatigue and dizziness on occasion, and Dr. Shilling testified a known side effect of metoprolol is fatigue.  (Hearing Test. at 48, 67).

and/or back pain. (*Id.* at 34). Her testimony at her social security hearings was consistent[3] with her assessment of her daily activities set forth in her Functional Report.

The ALJ discounted her subjective symptom complaints because her treatment providers described her as "healthy appearing, doing well from a cardiac standpoint, asymptomatic, stable, and with no cardiac symptoms present." (Decision at 22). As the Magistrate Judge noted, Plaintiff may have been stable from a cardiac standpoint following her successful surgeries on her aortic aneurysms, but she continued to experience, among other things, fatigue and dizziness. (*See* Report and Recommendation at 14-15). Even the medical records the Commissioner cites reflect that Plaintiff was consistent in presenting largely the same complaints throughout the entire medical period at issue. (*See e.g.*, Filing No. 12-7, Medical Records at 46 (noting her "function is limited by her fatigue and palpitations"); *id.* at 137 (noting she is "systematically stable from a cardiac standpoint" but she complains of exhaustion); Filing No. 12-9, Medical Records at 221 (same); Filing No. 12-10, Medical Records at 110 (normal ventricular function, complains of fatigue, sleepiness, and dizziness)).

The court therefore finds the ALJ failed to explain why the limiting effects of her symptoms are inconsistent with the medical evidence and other evidence in the record. Accordingly, this case must be remanded for the ALJ to conduct a more thorough credibility analysis.

---

[3] Importantly, Plaintiff testified she has bad days three or four times a week. (Hearing Test. at 68). The vocational expert opined that an individual who was absent at least two days a month on an ongoing basis would not be employable. (*Id.* at 73).

## V.      Conclusion

Because the ALJ failed to give specific reasons for discrediting Plaintiff's subjective symptom allegations, the court **OVERRULES** the Commissioner's objection (Filing No. 19), **ADOPTS** the Report and Recommendation, and **REMANDS** this case to the ALJ.

**SO ORDERED** this 23rd day of February 2022.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.